■ In the Matter of NORBERT ST. PIERRE, Respondent, v TAMMY BURROWS, Appellant. (And Seven Other Related Proceedings.) [788 NYS2d 494]—

Carpinello, J. Appeal from an order of the Family Court of Essex County (Ryan, J.), entered January 3, 2003, which, inter alia, dismissed petitioner's application, in eight proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

The divorced parties are the parents of two boys, now ages seven and eight. Pursuant to a June 2001 order, they shared joint legal custody with physical custody to respondent and visitation to petitioner. Within a few months of that order, a flurry of proceedings were commenced, mostly violation petitions filed by petitioner concerning his visitation. One of the proceedings commenced by petitioner sought sole legal and physical custody for himself and supervised visitation for respondent. Thereafter, respondent commenced her own proceeding seeking supervised visitation between petitioner and the children. Following a hearing on all of the petitions, Family Court dismissed all but one of petitioner's violation petitions, found no sanction was warranted and granted respondent sole custody with only supervised visitation to petitioner. He now appeals.

On appeal, petitioner takes issue with Family Court's decisions to grant respondent sole custody and give him only supervised visitation. He specifically argues that Family Court erred in its credibility determinations and improperly deferred such determinations to a court-appointed psychologist and child protective caseworker who each conducted a court-ordered evaluation.* He also takes issue with the ultimate opinions of these witnesses, characterizing their recommendations as "perfunctory" and/or "factually faulty, incongruous, [and] qualified." Upon our review of the court's decision, as well as the evidence adduced at the hearing, we are unpersuaded by each of these arguments.

While Family Court clearly found the court-appointed psychologist and child protective caseworker to be credible and gave considerable weight to their opinions, we are unable to

* Notably, Family Court found respondent to be "very credible" and "believe[d] her testimony to be truthful" while finding that petitioner exhibited "a great degree of self-importance" during his testimony and "expostulate[d] in general terms" instead of answering questions "in a direct and focused manner." As the court was able to observe these witnesses, we defer to this assessment of credibility and will not disturb it (*see e.g. Matter of Engwer v Engwer*, 307 AD2d 504, 505 [2003]; *Matter of Crocker v Crocker*, 307 AD2d 402, 403 [2003], *lv denied* 100 NY2d 515 [2003]; *see also Alanna M. v Duncan M.*, 204 AD2d 409 [1994]).

conclude that these opinions were either blindly followed by the court or that too much emphasis was placed on them. Indeed, the views of impartial professionals in resolving emotionally-charged custody and visitation disputes are a "helpful tool to a trial court" (*Barnett v Barnett*, 80 AD2d 717, 718 [1981]; *see Chait v Chait*, 215 AD2d 238 [1995]). Here, Family Court gave proper weight to the opinions of the professionals involved but in no way "defaulted in its duty to act as the trier of fact" by completely abdicating its responsibility to them.

Turning to the evidence, we are satisfied that the decisions to modify custody and to require supervised visitation have a sound and substantial basis in the record promoting the children's best interests (*see e.g. Matter of Custer v Slater*, 2 AD3d 1227, 1228 [2003]; *Matter of Hudson v Hudson*, 279 AD2d 659, 661 [2001]). First, as to the decision to terminate joint legal custody, the record convincingly demonstrates that these parties have an acrimonious relationship and are unable to communicate about anything in an amicable manner, particularly the children (*see Matter of Van Zandt v Sauers*, 12 AD3d 821 [2004]; *Matter of Smith v Miller*, 4 AD3d 697 [2004]; *Matter of Millett v Millett*, 270 AD2d 520, 522 [2000]). As noted by respondent, their relationship deteriorated "rapidly" following the June 2001 order and, as established by both parties, they do not communicate about the children's religion, schooling or medical issues. Thus, joint custody was no longer feasible (*see id.*). To this end, we are compelled to note that the family stress has had a negative impact on the children warranting mental health counseling. Not only were both children exhibiting violent behavior in excess of normal temper tantrums, using profanities and suffering from nightmares, one violently killed a young farm animal in a fit of anger and thereafter showed no remorse for his conduct.

We next turn to the issues of which parent should be granted sole custody and whether supervised visitation was warranted. As is often the case in matters of this nature, a court is faced with two parents who have each demonstrated significant parental weaknesses (*see e.g. Matter of Gary J. v Colleen L.*, 288 AD2d 720 [2001]) and who permit personal animosity toward the other to impede the health and welfare of their children. Thus here, respondent was never forthcoming with petitioner about medical information concerning the children, denied visitation on some occasions, lied to the child protective caseworker and police about certain abuse allegations, allegedly importuned certain individuals not to cooperate with officials investigating this matter and an order of protection was entered

against her in March 2002 prohibiting her from, among other conduct, assaulting or harassing petitioner or his current wife.

Petitioner, on the other hand, consistently exhibited far more troubling behavior and conduct. It was established at the hearing that petitioner makes derogatory comments and references to the children about respondent, her boyfriend and their home. For example, petitioner convinced the children that respondent's home was "poisoned," making them afraid to eat certain foods there. It was further established that petitioner coaches the children to make baseless allegations against respondent and insists that they call his current wife "mom" and refer to respondent only as "mother" or suffer punishment. This too has had a significant impact on the children, causing them confusion and causing them to tell others that respondent is not their "real mother." Furthermore, Family Court, in reviewing the reports of the court-appointed psychologist and caseworker, was justifiably concerned that petitioner suffers from a mental illness which warranted further evaluation and treatment. Therefore, while respondent is not free of improper conduct, it is predominantly petitioner's behavior and influence that has had a negative impact on the children warranting sole custody to respondent (*see Matter of Smith v Miller*, 4 AD3d 697 [2004], *supra*) and only supervised visitation to petitioner (*see Matter of Custer v Slater*, 2 AD3d 1227 [2003], *supra*).

Finally, we are compelled to agree with the Law Guardian's contention that Family Court erred in essentially delegating the nature and frequency of the supervised visitation to a local agency (*see Matter of Millett v Millett*, 270 AD2d 520, 522 [2000], *supra*). Thus, the matter must be remitted to Family Court to set forth the nature and frequency of all supervised visits (*see id.*). The remaining contentions of petitioner and the Law Guardian are rejected. In particular, we deny the Law Guardian's request that, upon remittal, Family Court should be directed to consider petitioner's current wife "as a possible supervisor for some of the visits." On the record before us, this individual is not adequately suited to protect the children from petitioner's negative influence during visitation.

Cardona, P.J., Crew III, Peters and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as delegated the parameters of the supervised visitation to a local agency; matter remitted to the Family Court of Essex County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.